IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CANCER WELLNESS FOUNDATION OF CENTRAL ALABAMA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:26-cv-165-ECM |
| | ) | [WO] |
| JENNIFER CONNER, *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

Cancer Wellness Foundation of Central Alabama ("CWF") filed this action against Jennifer Conner ("Conner") and Dress for the Cure, LLC ("Dress for the Cure") (collectively, "Defendants"), arising out of a dispute over the ownership of the "Women in Blue" trademarks, service marks, logo, and associated artwork ("Women in Blue Marks"). (Doc. 1). In its verified complaint, CWF seeks declarations under the Lanham Act, 15 U.S.C. § 1051, and the Copyright Act, 17 U.S.C. § 101, that CWF is the sole owner of the Women in Blue Marks (Counts I and II). Additionally, CWF brings claims against Conner for breach of fiduciary duty (Count III), constructive fraud (Count IV), and fraud (Count V); as well as claims against both Defendants for conversion of intellectual property (Count VI), unjust enrichment (Count VII), and false designation of origin/unfair competition in violation of Section 43(a) of the Lanham Act (Count VIII).

Now pending before the Court is CWF's motion for temporary restraining order and order to show cause, which the Court construes as also containing a motion for preliminary injunction. (Doc. 2).  For the reasons explained below, the Court concludes that CWF has demonstrated, at this stage, a likelihood of success on the merits of its trademark and copyright ownership claims, a likelihood of irreparable injury in the absence of a restraining order issued before the Defendants can be heard in opposition, and that the equities weigh in CWF's favor.  Accordingly, CWF's motion for a temporary restraining order (doc. 2) is due to be GRANTED to the extent that a temporary restraining order shall issue as set out further below.  Additionally, the Court will set an evidentiary hearing on CWF's motion for a preliminary injunction.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over CWF's state law claims pursuant to 28 U.S.C. § 1367(a).  Based on the allegations of the verified complaint, the Court concludes that it can properly exercise personal jurisdiction over the Defendants and that venue properly lies in the Middle District of Alabama, *see* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A temporary restraining order may issue only where the moving party demonstrates (1) that there is a substantial likelihood of success on the merits, (2) that the temporary restraining order is necessary to prevent irreparable injury, (3) that the threatened injury outweighs the harm the temporary restraining order would cause to the nonmoving parties, and (4) that the temporary restraining order would not be adverse to the public interest.

2

*Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001) (per curiam).  Additionally, pursuant to Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order may issue without notice to the nonmoving parties only if (1) specific facts in an affidavit or verified complaint show that the moving party will suffer immediate and irreparable injury before the nonmoving parties can be heard, and (2) the moving party certifies in writing the efforts it has made to notify the nonmoving parties and the reasons notice should not be required. FED. R. CIV. P. 65(b)(1).

"The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005) (per curiam).  A temporary restraining order is an "extraordinary remedy" to which the Court should "pay particular regard for the public consequences" of granting. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008).

## IV.  FACTS

"When ruling on a [temporary restraining order], 'all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a [temporary restraining order] are taken as true.'" *Alabama v. U.S. Dep't of Com.*, 2021 WL 2668810, at *1 (M.D. Ala. June 29, 2021) (second alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).[1]

---

[1] Here, and elsewhere in this Opinion, the Court cites nonbinding authority.  While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

This case is a dispute over the legal ownership of the Women in Blue Marks. CWF is a 501(c)(3) nonprofit corporation that provides "support services, educational services, and assistance to cancer patients throughout Central Alabama." (Doc. 1 at 1, paras. 1, 3). Conner is the former President of CWF's Board of Directors ("Board"), and Dress for the Cure is Conner's wholly owned limited liability company. (*Id.* at 2, para. 7).

In late 2018, CWF's Board "formed a committee to develop new fundraising initiatives to support [CWF]'s charitable mission." (Doc. 3-1 at 2, para. 3). This "board-driven initiative" resulted in the "Women in Blue campaign." (*Id.*). At the Board's request, Betsey Johns ("Johns") volunteered to work with Wendy Anzalone, who was then CWF's Executive Director, to develop a design for use in the Women in Blue campaign. (Doc. 1 at 2, para. 6; *accord* doc. 3-2 at 1–2, para. 2). Johns developed four draft designs, and CWF ultimately selected the following as its logo for the campaign:



(Doc. 3-2 at 2–3, para. 5). Johns stated that she "understood that the dress design was being created for CWF's benefit as part of an organizational fundraising initiative"—not "for the personal benefit of any individual, including Jennifer Conner." (*Id.* at 2, para. 4; *see id.* at 4, para. 12 ("I intended the design that I created to be owned and used by CWF for its

charitable purposes, and I have assigned all of my rights in the design to CWF as per the assignment agreement attached hereto . . . .")).  CWF then commissioned Kwik Kopyshop to finalize Johns' draft design for use as a final logo. (Doc. 3-1 at 2, para. 5; *see* docs. 3-4 & 3-5 (Kwik Kopyshop's invoices)).

CWF spent "$11,454.64 in organizational funds to launch the Women in Blue campaign in early 2019," which included purchasing "scarves, flyers, pins, yard signs, T-shirts, billboard advertising, logo design, a launch party, and video production." (Doc. 3-1 at 2–3, para. 6).  CWF reports that the campaign was "an extraordinary success," generating $58,087 in net income in its first year. (*Id.* at 3, para. 8).  And ever since, CWF reports that the Women in Blue campaign has served as its "signature funding initiative." (*Id.* at 3, para. 9).  Accordingly, CWF claims that it has developed significant goodwill in the Women in Blue brand over the intervening years. (*Id.* at 3, para. 10).

However, unbeknownst to CWF, Conner began undertaking efforts to claim ownership rights in the Women in Blue Marks.  Conner registered an Alabama state trademark on behalf of Dress for the Cure for "A blue sundress with light blue bow and ribbon w/ 'Women in Blue' written on the bottom half of the dress." (*Id.* at 4, para. 13; *see* doc. 3-8).  Conner also submitted a federal trademark application with the United States Patent and Trademark Office for "WOMEN IN BLUE RAISING COLON CANCER AWARENESS FOR ME AND YOU." (Doc. 3-1 at 4, para. 14; *see* doc. 3-9).  That application also named Dress for the Cure as the registrant and gave Conner's home address; however, the application also used a screenshot from CWF's website as the requisite specimen of use in commerce. (Doc. 3-1 at 4, para. 14).

5

In October 2025, Conner, who was still President of CWF's Board, presented CWF's Executive Committee with an agreement to license the Women in Blue Marks, "asserting her personal ownership of the Women in Blue Marks." (*Id.* at 5, para. 15). Other Board members "raised concerns about Conner's claims of personal ownership" of the Women in Blue Marks, and following the October 2025 meeting, the Board sent Conner a letter "regarding her pursuit of the trademark." (*Id.* at 5–6, paras. 19–20). On February 2, 2026, Conner sent CWF a letter through her attorney "asserting Conner's sole ownership of the Women in Blue [M]arks and threatening to demand that CWF cease all use of the marks if CWF did not accept a conditional licensing arrangement." (*Id.* at 6, para. 22).

Conner is no longer the President of CWF's Board as of February 2, 2026. Since then, Facebook received a request to take down CWF's posts with the Women in Blue logo pursuant to Conner's copyright registration of the logo, and Facebook has removed the requested posts. (Doc. 1 at 14, paras. 80–81). The removal of CWF's posts has harmed CWF's fundraising efforts for cancer awareness and survivor support during its "Women in Blue campaign," which runs during March. (*Id.* at 14, paras. 82–83).

## V.  DISCUSSION

### A.    Substantial Likelihood of Success on the Merits

In its motion, CWF argues that it has a substantial likelihood of success on the merits of its trademark ownership claim (Count I) and copyright ownership claim (Count II).

### 1.  Trademark

Beginning with the trademark ownership claim, CWF contends that it owns the Women in Blue Marks, notwithstanding its lack of registration. (*See* doc. 3 at 5–6). CWF

cites various facts in support of its trademark ownership claim:  (1) CWF has consistently used the mark "since its first use in December 2019" (doc. 3 at 6); (2) CWF "commissioned and paid Kwik Kopyshop to update, finalize, and set up the graphic design for the Women in Blue Logo" (*id.* at 6); and (3) the original Women in Blue design "was created by Betsey Johns at the request and direction of CWF's Board of Directors" (*id.*).

At the outset, the Court acknowledges "the bedrock principle of trademark law that a mark can identify and distinguish only a *single* commercial source." *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (emphasis added) (citing 2 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 16:40, p. 16–77 (4th ed. 2011)).   Common-law trademark rights—like the ones CWF claims here—are "'appropriated only through actual prior use in commerce.'" *Id.* (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193–94 (11th Cir. 2001); *cf. Tana v. Dantanna's*, 611 F.3d 767, (11th Cir. 2010) ("To satisfy the first element of § 43(a)—proof of a valid trademark—a plaintiff need not have a registered mark.  We have recognized that the 'use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same course.'" (quoting *Conagra v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir. 1984))).  "The use of a mark in

commerce . . . must be sufficient to establish ownership rights for a plaintiff to recover against subsequent users under section 43(a)."[2] *Id.* (citing *Techsplosion*, 261 F.3d at 1195).

The Eleventh Circuit applies a two-part test to determine whether a party has proved prior use of a mark sufficient to establish ownership:  "[E]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Jurado*, 643 F.3d at 1321 (quoting *Techsplosion*, 261 F.3d at 1195).

At this stage and on this record, CWF has shown a substantial likelihood of success on the merits of its trademark ownership claim because it has adequately satisfied both parts of the Eleventh Circuit's test.  Starting with adoption, CWF has presented evidence that the original Women in Blue dress design was created at the direction of CWF's Board. (Doc. 3 at 5).  Additionally, Conner did not attempt to adopt the trademark until well after CWF adopted the mark in 2019.  As for part two—whether the Women in Blue trademark has been used in a way sufficiently public to identify or distinguish the marked goods— CWF avers that its "name, address, and website have been consistently associated with the Women in Blue mark since its first use in December 2019." (*Id.* at 6).   And CWF has consistently used the mark to prosperous ends:  the Women in Blue campaign to date "shows gross income of approximately $72,042" raised. (Doc. 1 at 7).  Customers have seen the Women in Blue campaign, associated the mark with CWF, and donated money in

---

[2] "'Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition' in interstate commerce, and 'forbids unfair trade practices involving infringement of . . . trademarks, even in the absence of federal trademark registration.'" *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

support.  Thus, at this stage, CWF has shown a substantial likelihood of success on the merits of its trademark ownership claim.

### 2.  Copyright

CWF also contends that it has a substantial likelihood of success on the merits of its copyright ownership claim (Count II).  "Copyright interests 'vest[] initially in the author or authors of the work. The authors of a joint work are co[-]owners of copyright in the work.'" *Patrick v. Poree*, 2023 WL 8643538, at *2 (11th Cir. Dec. 14, 2023) (citing 17 U.S.C. § 201(a)).  Importantly, "[o]wners of copyrights have 'exclusive rights to do and to authorize' specific actions under 17 U.S.C. § 106." *Id.*  Additionally, copyright ownership can be transferred. 17 U.S.C. § 201(d).  Although CWF has not registered the Women in Blue Marks with the United States Copyright Office, CWF may still be entitled to protection. *See Code Revision Comm'n for Gen. Assembly of Ga. v. Public.Resource.Org*, 906 F.3d 1229, 1236 (11th Cir. 2018).  "Copyright inheres in authorship and exists whether or not it is ever registered." *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994).

At this stage, accepting as true the allegations in CWF's verified complaint, CWF has established a substantial likelihood of success on the merits of its copyright ownership claim.  "[T]o ascertain who holds a copyright in a work, we ordinarily must ascertain the identify of the author." *Public.Resource.Org*, 906 F.3d at 1236.  CWF submits that Johns is the author of the Women in Blue Marks and "assigned all of her rights in the artistic work to CWF." (Doc. 1 at 17, para. 105; *see also* doc. 3-12 at 2–6).  Moreover, Johns created the design "at the request and direction of CWF's Board of Directors." (Doc. 2 at

2). CWF acknowledges that Conner could have played a role in the creation of the Women in Blue Marks such that she is a co-owner. (Doc. 3 at 7–8). But co-ownership would not extinguish CWF's copyright ownership. At a minimum, Conner and CWF may be co-owners of the Women in Blue copyright. *See Patrick*, 2023 WL 8643538, at *2. Therefore, because CWF has sufficiently established authorship of the copyright at this stage, CWF has established a substantial likelihood of success on the merits of its copyright ownership claim.

Accepting as true the verified complaint's factual allegations and the factual averments in the declarations, the Court finds that CWF has demonstrated a substantial likelihood of success on the merits of its trademark and copyright ownership claims. Because the Court has determined that CWF has a substantial likelihood of success on the merits of these two claims, the Court pretermits any discussion of the substantial likelihood of success on CWF's remaining claims. *See Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla. 2005) ("To obtain temporary injunctive relief, [a party] must show a substantial likelihood of success on at least one claim."), *aff'd*, 403 F.3d 1223 (11th Cir. 2005); *Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'" (citation omitted)).

## B. Irreparable Injury

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d

1283, 1285 (11th Cir. 1990). But irreparably injury can be based on the loss of goodwill, loss of control of reputation, loss of trade, and the possibility of confusion. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (loss of goodwill); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (loss of control over the reputation of trademark); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (per curiam) (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). And "[i]n copyright cases, irreparable harm is presumed on a showing of a reasonable likelihood of success on the merits." *Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 3d 1310, 1314 (S.D. Fla. 2003).

CWF argues that if Conner's pending federal trademark application were granted, it could create a presumption of ownership, which would be extremely difficult and costly to overcome. Additionally, CWF contends that the Defendants' conduct will harm CWF's goodwill and CWF's trademark rights, and constitutes a loss of CWF's control over the reputation of the Women in Blue Marks. At this stage, the facts alleged in the verified complaint, CWF's declarations, and the other evidentiary submissions demonstrate that CWF will likely be irreparably harmed absent a temporary restraining order. Moreover, the Court concludes that specific facts in CWF's verified complaint show that irreparable injury will result to CWF before the Defendants can be heard in opposition. *See* FED. R. CIV. P. 65(b)(1)(A).

11

## C.     Balance of Harms

As in other trademark cases, CWF has demonstrated that unless the Defendants are enjoined and restrained, CWF is likely to suffer further injuries that cannot be fully compensated or measured in economic terms. *See, e.g.*, *Levi Strauss*, 51 F.3d at 986.  If the Defendants are allowed to further interfere with CWF's use of its trademark, CWF "will continue to suffer irreparable harm in the form of a loss of control over its trademark[]." *Shoney's N. Am. Corp. v. Goldmine Hosp., LLC*, 2010 WL 3940602, at *1 (M.D. Tenn. 2010).

As for the Defendants, a temporary restraining order here would prevent them from continuing to issue cease and desist letters regarding CWF's likely trademark. "*That is not a harm.*  But, even if it were, this purported 'harm' would not outweigh the justification behind issuing this temporary restraining order." *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2024 WL 5433925 at *4 (S.D. Fla. 2024) (emphasis added).  Put plainly, any harm the Defendants might suffer here is not sufficient to counsel against the entry of a restraining order because the Defendants are not permitted to usurp CWF's right to use its trademark. *Cf. Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, 2019 WL 1552868, at *3 (M.D. Fla. 2019) ("[Plaintiff] argues that Defendants will not suffer any cognizable hardship from an injunction because it only seeks to prohibit unlawful activity and cancel fraudulently obtained trademarks.  The Court agrees." (internal citation omitted)); *Bahia Bowls Franchising LLC v. DJS LLC*, 2023 WL 2303048, at *7 (M.D. Fla. 2023) ("The injury to Plaintiffs that will follow if the temporary restraining order is not granted outweighs any harm Defendants might suffer if the

12

temporary restraining order is granted since Defendants are not permitted to use the Bahia Bowls Marks."); *Delta T, LLC v. Kale Fans Am. S.A. De C.V.*, 2020 WL 3250188, at *4 (M.D. Fla. 2020) ("Although Defendant possibly stands to lose sales of its allegedly counterfeit and infringing products if the temporary restraining order is issued, this will not constitute a legitimate hardship because Defendant has no right to engage in counterfeiting and infringing activities."). Accordingly, the Court finds that the threatened injury to CWF outweighs the harm a temporary restraining order would cause to the Defendants.

**D.     Public Interest**

The public interest "favors protecting a party's control of its own trademarks." *Guangdong Galanz Microwave Oven & Elec. Appliances Mfg. Co. v. Sunbeam Prods., Inc.*, 2021 WL 4528329, at *8 (S.D. Fla. 2021) (collecting cases). Additionally, it is in the public interest to uphold copyright protections and prevent copyright violations. *See C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works."); *Locascio v. Ji*, 2025 WL 3282574, at *2 (S.D. Fla. 2025). Under the circumstances of this case, the public interest is served by ensuring a likely trademark and copyright holder—CWF—is permitted to continue to use its trademark and copyright free of interference during a key fundraising period. Moreover, "[t]he public has an interest in not being misled about the source of trademarked products and in an accurate trademark registry." *Night Owl SP*, 2019 WL 1552868, at *3. The Court thus finds that a temporary restraining order would be in the public interest.

**E.     Certification of Counsel**

CWF's counsel has certified in writing that he provided the Defendants notice of CWF's motion for temporary restraining order (doc. 2) by sending it via email to the Defendants' counsel and advising the Defendants' counsel of the motion via telephone call. The Court is satisfied with CWF's counsel's efforts to give notice to the Defendants in accordance with Rule 65(b)(1).  Additionally, as explained above, the Court concludes that irreparable injury will result to CWF before the Defendants can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A).

**F.     Bond Requirement**

Rule 65(c) provides that the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  It is well-established, however, that "the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all." *BellSouth Telecomms.*, 425 F.3d at 971 (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B Feb. 1981)).[3]  Here, based on the totality of the circumstances, including the expedited basis on which the Court will hold a hearing on CWF's motion for preliminary injunction, the Court in its discretion waives the bond requirement.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

14

## VI.  CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED that CWF's motion for temporary restraining order (doc. 2) is GRANTED IN PART as follows:

1.      Defendants Jennifer Conner and Dress for the Cure, LLC, their agents, servants, employees, attorneys, and all persons acting in concert or participation with them, are hereby ENJOINED and RESTRAINED from filing any new trademark applications or copyright registrations, or taking any further action to prosecute the pending federal trademark applications (U.S. Serial No. 99150719 and 99633097) or copyright registration (VA 2-485-810) for the Women in Blue Marks or any confusingly similar mark.

2.      Defendants are ENJOINED and RESTRAINED from transferring, assigning, licensing, selling, or otherwise disposing of any purported trademark or copyright rights in the Women in Blue Marks, including any state or federal trademark registrations or applications.

3.      Defendants are ENJOINED and RESTRAINED from interfering with, disrupting, or threatening to disrupt CWF's use of the Women in Blue Marks in connection with its charitable fundraising activities.

4.      Defendants are ENJOINED and RESTRAINED from sending any cease-and-desist letters, demand letters, or other communications to CWF, its partners, sponsors, vendors, donors, or other third parties asserting ownership of, or demanding compensation for the use of, the Women in Blue Marks.  The Defendants are further ORDERED to

15

withdraw any demands to third parties to take down posts by CWF on the Internet or social media platforms.

5.      Defendants shall maintain the status quo with respect to any existing state or federal trademark registrations or applications relating to the Women in Blue Marks and shall take no action to amend, abandon, or otherwise alter the status of such registrations or applications without prior Court approval.

6.      Defendants shall preserve and maintain all documents, communications, records, and electronic data relating to the Women in Blue Marks, including but not limited to trademark applications, copyright registrations, correspondence relating thereto, licensing agreements, and financial records relating to any use of the Women in Blue Marks.

7.      The Court in its discretion waives the bond requirement under Rule 65(c).

8.      This Temporary Restraining Order shall remain in effect for fourteen days from the date of entry, unless extended by consent of the parties or by order of this Court.

9.      An evidentiary hearing on CWF's motion for preliminary injunction (doc. 2) is SET for **March 25, 2026 at 9:30 a.m. CDT** in **Courtroom 2A**, Frank M. Johnson, Jr. United States Courthouse Complex, 1 Church Street, Montgomery, Alabama.  The Clerk of the Court is DIRECTED to provide a court reporter.

10.     The Defendants shall file a response to CWF's motion for preliminary injunction as soon as practicable but **no later than 5:00 p.m. CDT on March 20, 2026**.

11.     CWF shall IMMEDIATELY send courtesy copies via email of this Opinion along with CWF's verified complaint, its motion for temporary restraining order and

16

preliminary injunction (doc. 2), and brief in support (doc. 3), to the Defendants' attorney,

LaConya Murray.

DONE this 13th day of March, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE